UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

JUAN TRUJILLO,                                  Case No. 17-CV-1633 (PJS/ECW)

             Plaintiff,

v.                                              ORDER

CORIZON HEALTH, INC., f/k/a
CORRECTIONAL HEALTH SERVICES;
JANINE DICKENSON, R.N.; TOM
PETERSON, R.N.; MICHAEL RYAN,
R.N.; and LUKE KERANEN, A.T.C., sued
in their individual and official capacities,

             Defendants.

Zorislav R. Leyderman, for plaintiff.

Jeffrey Kent Boman, MINNESOTA ATTORNEY GENERAL'S OFFICE;
Charles Gross and Corinne Ivanca, GERAGHTY O'LOUGHLIN &
KENNEY, P.A., for defendants.

Juan Trujillo brought this action under 42 U.S.C. § 1983 against defendants Janine Dickenson, Luke Keranen, Tom Peterson, and Michael Ryan (collectively the "state defendants")—four medical professionals who worked at a correctional facility at which Trujillo was incarcerated—for allegedly acting with deliberate indifference to Trujillo's serious medical needs. This matter is before the Court on the state defendants' motion for summary judgment. For the reasons that follow, the Court denies the motion.[1]

---

[1]Trujillo sued the state defendants in both their official and individual capacities.
(continued...)

I. BACKGROUND

The facts are sharply disputed. For purposes of ruling on the state defendants' summary-judgment motion, however, the Court must accept Trujillo's version as true, even if the Court is skeptical about some of what Trujillo has claimed. *See Bennett v. Miles*, 603 F. App'x 507, 509 (8th Cir. 2015) (reversing a district court's grant of summary judgment when there were "conflicts between the physicians' evidence" and the inmate's "attestations regarding his symptoms and complaints when he saw the physicians"). Briefly, Trujillo's account is as follows:

On May 17, 2011, Trujillo fractured a bone in his right leg while playing soccer at the Minnesota correctional facility in Moose Lake. ECF No. 60-16 at 4. Dickenson (a nurse) examined Trujillo shortly after he was injured. Trujillo told Dickenson that he was in "really bad pain" and thought that he had a broken leg. ECF No. 60-2 at 11-12, 15. At that point, Trujillo's leg had already swollen so much that he could not wear

---

[1](...continued)
As Trujillo conceded at the hearing, however, his official-capacity claims are barred by the Eleventh Amendment and fall outside the scope of § 1983. *See Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997) ("[Section] 1983 damage claims against . . . individual defendants acting in their official capacities are likewise barred, either by the Eleventh Amendment or because in these capacities they are not 'persons' for § 1983 purposes."). For that reason, Trujillo's official-capacity claims will be dismissed with prejudice, *see Tex. Cmty. Bank, N.A. v. Mo. Dep't of Soc. Servs.*, 232 F.3d 942, 943 (8th Cir. 2000) (holding that claims barred by the Eleventh Amendment should be dismissed with prejudice), and this order will focus on Trujillo's individual-capacity claims.

pants or put on shoes. ECF No. 60-2 at 12.[2] Dickenson told Trujillo that he "don't got nothing," *id.* at 15—i.e., that his injury was not serious—and she sent him away with ACE wrap, crutches, and some ice, ECF No. 32 at 1. Hours later, Trujillo's leg had swollen to the size of a soccer ball. ECF No. 60-2 at 12-13.

Trujillo's symptoms persisted over the next two weeks, through meetings with Keranen (an athletic trainer) on May 18th, Peterson (a nurse) on May 20th, and Ryan (a nurse) on May 31st. *See* ECF No. 60-16 at 2-3. Trujillo's leg was severely swollen during this entire time. *See* ECF No. 60-2 at 12-13, 17-19. Moreover, Trujillo told each of these defendants that he was in pain, and all of these defendants saw that Trujillo could not

---

[2]Trujillo is not entirely fluent in English, and he testified without the benefit of a translator. As a result, his deposition testimony is sometimes difficult to follow.

In his deposition, Trujillo testified that, shortly after he was injured, a nurse "gave [him] a bag of ice to put—that it got to be—the swelling will go down first and then he can check it out again because my leg was swollen, like, so big I can't even wear shoes or nothing, even pants." ECF No. 60-2 at 12. Although Trujillo used the masculine pronoun "he"—and although Dickenson is a woman—the context makes clear that Trujillo was referring to Dickenson. (Trujillo had earlier confused his pronouns when referring to Dickenson. *Id.* at 11-12.)

It is not clear whether Trujillo meant to say that his swelling was so bad that he could not put on pants or shoes at the time Dickenson examined him or whether he instead meant to say that he could not put on pants or shoes later, after the injured leg had continued to swell. But the Court must view the evidence in the light most favorable to Trujillo, and thus the Court must assume that Trujillo was testifying that, when Dickenson examined him, his leg was already so swollen that he was unable to wear pants or shoes.

put normal pressure on his leg or properly bend his knee.[3]  Two months later, after Trujillo was finally seen by a doctor, Trujillo was diagnosed with a bone fracture.  By then, however, the fracture had improperly healed, resulting in a deformed leg.  Fixing Trujillo's leg will require painful surgeries and cost hundreds of thousands of dollars.  ECF No. 60-16 at 4-5.

## II.  ANALYSIS

### A.  *Standard of Review*

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[3]As to Keranen:  Keranen noted that Trujillo was in pain and had difficulty properly bending his knee.  ECF No. 60-6 at 5.  In his deposition, Trujillo testified that, at the time that he visited Keranen, he could not walk and his leg was severely swollen.  Trujillo also testified that he and Keranen spoke about obtaining an x-ray and visiting a hospital.  *See* ECF No. 60-2 at 12-13.  It is reasonable to conclude that Keranen saw that Trujillo could not walk or put pressure on his right leg.

As to Peterson:  Peterson noted that Trujillo was experiencing continued pain and swelling.  ECF No. 60-7 at 8.  Peterson also noted that the swelling was so bad that Trujillo could not put on socks, shoes, or pants.  *See* ECF No. 60-2 at 17-18.  Trujillo told Peterson that he could not bend his knee and that he needed to go to a hospital.  *Id.*  It is reasonable to infer that Peterson saw that Trujillo could not put pressure on his right leg.

Finally, as to Ryan:  Ryan noted that Trujillo had continued concerns regarding persistent pain, and that he was still on crutches and experiencing swelling.  Ryan also noted that, although Trujillo's knee had a fair range of motion, he was not able to bend it properly.  ECF No. 60-9 at 3.  By that point, Trujillo had black and purple bruising from his knee down to his toes.  ECF No. 60-2 at 18.  Once again, it is reasonable to infer that Ryan saw that Trujillo could not put pressure on his right leg.

law." Fed. R. Civ. P. 56(a). A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When considering a summary-judgment motion, the Court "must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the non-moving party." *Winthrop Res. Corp. v. Eaton Hydraulics, Inc.*, 361 F.3d 465, 468 (8th Cir. 2004).

### B. Merits

To recover on his § 1983 claim, Trujillo must prove deliberate indifference to a serious medical need—i.e., he must prove that he had "an objectively serious medical need and that prison officers knew of the need but deliberately disregarded it." *Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006). A serious medical need is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (quotation omitted). "The subjective inquiry must show a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." *Gordon*, 454 F.3d at 862. "Whether an inmate's condition is a serious medical need and whether an official was deliberately indifferent

to the inmate's serious medical need are questions of fact." *See Schaub v. VonWald*, 638 F.3d 905, 915 (8th Cir. 2011).

1. Serious Medical Need

Trujillo undoubtedly had an objectively serious medical need. His obvious symptoms—including massive swelling, intense pain, an inability to put pressure on his leg, and an inability to properly bend his knee—would have alerted even a layperson to Trujillo's need for medical treatment. *See Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (explaining that obvious "outward signs of injury" such as bleeding and swelling may notify a layperson of the need for medical care); *see, e.g.*, *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004) (finding a "need for medical attention that would have been obvious to a layperson" based on evidence that the plaintiff suffered "extreme pain" from a tooth infection that caused his gums to swell and bleed and made it difficult to eat or sleep). Had, say, a plumber or bus driver or dishwasher seen Trujillo's leg and heard his complaints, that layperson would undoubtedly have told him: "You really need to see a doctor."

2. Deliberate Indifference

To establish deliberate indifference, Trujillo "must show that the [defendants] recognized that a substantial risk of harm existed *and* knew that their conduct was inappropriate in light of that risk." *Krout v. Goemmer*, 583 F.3d 557, 567 (8th Cir. 2009).

Typically, a defendant's knowledge of a substantial risk of harm[4] must be proven through circumstantial evidence, and the most important circumstantial evidence is the obviousness of that risk. As the Supreme Court has explained:

> Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . *and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious*.

*Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (emphasis added); *see also Jones v. Minn. Dep't of Corrections*, 512 F.3d 478, 481-82 (8th Cir. 2008) ("The determination that prison

---

[4]The state defendants argue that Trujillo must prove that each of them subjectively concluded that he had *fractured his leg*. That is not correct. Trujillo must prove that each state defendant subjectively concluded that he had a *serious medical need*, but Trujillo does not have to show that each state defendant knew the precise nature of his injury. Suppose, for example, that one of the state defendants had come across Trujillo lying face down on the floor, unconscious, drooling, and having muscle spasms. It would be obvious to the defendant that Trujillo had a serious medical need, even though the defendant would likely not know whether Trujillo had suffered a heart attack, or stroke, or epileptic seizure, or some other malady. In any event, as discussed below, Trujillo has presented sufficient evidence to permit a reasonable jury to find that each of the state defendants knew not just that Trujillo had a serious medical need, but specifically that he had a fractured leg.

officials had actual knowledge of a serious medical need may be inferred from circumstantial evidence or from the very fact that the risk was obvious.").

Here, a reasonable jury could conclude that Trujillo's need to be examined by a physician was so obvious that each of the state defendants *must* have known of it. After all, if Trujillo's testimony is to be believed, his swelling was extraordinary: His foot swelled to the size of an "elephant's foot" and his knee swelled to the size of a "soccer ball." ECF No. 60-2 at 12-13, 17, 33; *see, e.g.*, *Wise v. Lappin*, 674 F.3d 939, 941 (8th Cir. 2012) (finding a trialworthy dispute regarding the defendants' knowledge of a serious medical need when an inmate handed over medical records, complained about dental issues and significant pain, and had difficulty eating and an obvious jaw deformity). The state defendants also knew that Trujillo was in considerable pain, that he could not put normal pressure on his leg, and that he was unable to fully bend his knee. The situation cried out for an examination by a physician.

The testimony of Penny Wilmers (Trujillo's expert witness) supports the Court's conclusion. All of the state defendants were licensed medical professionals. Three of them were nurses (Dickenson, Peterson, and Ryan), and one of them was an athletic trainer (Keranen). Wilmers testified that nurses are trained to associate Trujillo's exact symptoms—swelling, pain, inability to bear normal weight, and limited range of motion—with a bone fracture. *See* ECF No. 60-14 at 5. Indeed, Wilmers testified that

"any properly trained and competent nurse would immediately realize that Mr. Trujillo had most likely sustained a fractured bone and needed a consult with a doctor or an orthopedic specialist to diagnose the injury and prevent any further damage." *Id.* at 6. Moreover, Keranen had been specifically trained to identify bone fractures and knee injuries. ECF No. 60-6 at 4. Given the state defendants' training and experience, a reasonable jury could conclude that each of them must have known of Trujillo's serious medical need because Trujillo was presenting "clear and obvious symptoms associated with bone fractures[.]" ECF No. 60-14 at 5.

As noted, Trujillo must prove not only that the state defendants knew that he had a serious medical need, but also that they "knew that their conduct was inappropriate in light of that risk." *Krout*, 583 F.3d at 567. Here, too, a defendant's knowledge may be proven through circumstantial evidence, and one important type of circumstantial evidence is the obviousness of the inadequacy of the defendant's response. As the Eighth Circuit has observed, "an obviously inadequate response may create an inference that the [defendant] recognized the inappropriateness of his conduct." *Ryan v. Armstrong*, 850 F.3d 419, 425-26 (8th Cir. 2017) (cleaned up); *see also Krout*, 583 F.3d at 567 ("[T]he obvious inadequacy of a response to a risk may support an inference that the officer recognized the inappropriateness of his conduct.").

Here, a reasonable jury could find that the response of each of the state defendants to Trujillo's serious medical need was grossly inadequate. None of the state defendants instructed Trujillo not to put weight on his injured leg, restricted Trujillo to a lower bunk (so he would not have to use his injured leg to climb to an upper bunk), or gave Trujillo a wheelchair. And none of the state defendants took any steps to get Trujillo examined by a doctor until weeks after he was injured.[5]

Wilmers's assertions support the conclusion that the state defendants' response to Trujillo was patently inadequate. Wilmers asserted that the treatment provided to Trujillo by the state defendants was "reckless and incompetent." ECF No. 60-14 at 6-7. Specifically, Wilmers asserted that the failure of any of the state defendants to refer Trujillo for a prompt doctor's visit or order him not to put weight on his leg was an "inexcusable" and "dangerous" deviation from the standard of care—one that put Trujillo at a "great risk of harm[.]" *Id.* at 6. A reasonable jury could find, based on the "obvious inadequacy" of each state defendant's response, that each state defendant "recognized the inappropriateness of his [or her] conduct. *Krout*, 583 F.3d at 567.

---

[5] Ryan referred Trujillo to a physician on May 31. But Trujillo did not see a physician until June 7. ECF No. 60-14 at 3. As a result, Trujillo had to wait more than three weeks after fracturing his leg to see a physician even though he requested a doctor's appointment multiple times before May 31. ECF No. 60-2 at 13, 17. Wilmers asserted that Ryan's referral was not an appropriate response because Trujillo needed a *prompt* examination by a doctor. ECF No. 60-14 at 7.

The Court is well aware that, in order to prove deliberate indifference to a serious medical need, Trujillo "must show more than negligence, more even than gross negligence . . . ." *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). Indeed, as the Court has already noted, Trujillo must show something "akin to criminal recklessness." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008). This is a very high standard—one that is not often met. In this case, however, the Court holds that *if* a jury credited *all* of Trujillo's testimony, the jury could find that the standard was met. The Court therefore denies the motion of the state defendants to dismiss Trujillo's claims.

### 3. Qualified Immunity

The state defendants have also moved to dismiss Trujillo's claims on grounds of qualified immunity. "Qualified immunity protects state actors from civil liability when their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kahle v. Leonard*, 477 F.3d 544, 549 (8th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "When qualified immunity is raised at the summary judgment stage, the proper course is to view the facts and draw reasonable inferences in the light most favorable to the plaintiff . . . ." *Shannon v. Koehler*, 616 F.3d 855, 864 n.5 (8th Cir. 2010).

The parties agree that, in this case, there is no practical difference between the deliberate-indifference inquiry and the qualified-immunity inquiry. As discussed above, a state defendant cannot be found deliberately indifferent unless the jury finds that the defendant (1) actually knew that Trujillo had a serious medical need and (2) deliberately disregarded that need. Because Trujillo's right to be free from deliberate indifference to a serious medical need was clearly established by May 2011, any state defendant who consciously disregarded what he or she had subjectively concluded was a serious medical need would not be entitled to qualified immunity.[6] *See Langford v. Norris*, 614 F.3d 445, 461 (8th Cir. 2010) (finding that a reasonable official standing in the defendant's shoes would have understood that ignoring the inmates' complaints about deficient medical care "contravened clearly established principles of Eighth Amendment jurisprudence").

---

[6]As a general matter, the "doctrine of qualified immunity requires 'an *individualized* analysis of *each* officer's alleged conduct.'" *Walton v. Dawson*, 752 F.3d 1109, 1125 (8th Cir. 2014) (quotation omitted); *see also Manning v. Cotton*, 862 F.3d 663, 668 (8th Cir. 2017) (holding that the district court erred by failing to conduct an individualized analysis for each officer). The Court has conducted that individualized analysis. But if Trujillo's account is true, each of the state defendants observed the same critical symptoms (extreme swelling, intense pain, inability to place normal pressure on the leg, and inability to fully bend the knee), and each of the state defendants failed to take the same critical steps (advise Trujillo not to place any weight on his leg, request a lower-bunk assignment for Trujillo, and, most important, ensure that a doctor promptly examine Trujillo). For that reason, the Court has often discussed the state defendants as a group.

The Court has already concluded that, *if* a jury credited every aspect of Trujillo's version of events, the jury could find that each of the state defendants was deliberately indifferent. Necessarily, then, the Court concludes that, *if* a jury credited every aspect of Trujillo's version of events, none of the state defendants would be entitled to qualified immunity. The Court therefore denies the motion of the state defendants to dismiss Trujillo's individual-capacity claims on grounds of qualified immunity.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT the state defendants' motion for summary judgment [ECF No. 27] is GRANTED in part and DENIED in part as follows:

1. The motion is GRANTED as to all official-capacity claims brought against the state defendants, and those claims are DISMISSED WITH PREJUDICE AND ON THE MERITS.

2. The motion is DENIED in all other respects.

Dated: March 28, 2019	 s/Patrick J. Schiltz
	Patrick J. Schiltz
	United States District Judge